

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| DIANA J. THOMPSON, et al., | ) | |
| | ) | |
| Appellants, | ) | WD86635 |
| v. | ) | |
| | ) | OPINION FILED: |
| | ) | November 5, 2024 |
| HEIRS OF | ) | |
| KATHRYN L. METCALF, et al., | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Saline County, Missouri**
**The Honorable Russell Kruse, Judge**

**Before Division Two:** W. Douglas Thomson, Presiding Judge,
Karen King Mitchell and Janet Sutton, Judges

This appeal arises from a dispute over ownership of the real property located at 314

East Highlander Street in Marshall, Missouri[1] (Property). Diana Thompson was the

successful bidder for the Property at a second tax sale held by the Saline County, Missouri

collector (Collector).[2] At the time of the sale, the Property was owned by Joseph Metcalf,

---

[1] The legal description is "THE EAST THIRTY (30) FEET OF LOT SEVEN (7) AND ALL OF LOT SIX (6) IN BLOCK FOUR (4) OF ELSEA HEIGHTS ADDITION TO THE CITY OF MARSHALL, SALINE COUNTY, MISSOURI."

[2] "Because this is a second tax sale case, it is governed by the statutes applicable to first and second tax sales as described in this opinion. Third tax sale cases are

who later transferred the Property by quitclaim deed to his siblings, Jerry Metcalf and Joanne Ford. Diana and her husband Leon (collectively, the Thompsons) filed a petition against Jerry and Joanne, among others, to quiet title to the Property in Diana's name.[3] The motion court concluded that Diana forfeited her interest in the Property when she failed to notify Joseph of his right to redeem the Property. The court granted summary judgment in favor of Jerry and Joanne, and the Thompsons appealed.

The Thompsons raise four points on appeal. They claim the motion court erred in granting summary judgment to Jerry and Joanne because (1) Joseph was not entitled to a redemption notice in that the mere designation of a beneficiary in a beneficiary deed does not constitute a "publicly recorded claim" under § 140.405[4] of the Jones-Munger Act (the Act);[5] (2) Joseph's due process rights were not violated in that the notices sent were reasonably calculated, under the circumstances, to notify interested parties of their redemption rights; (3) Jerry and Joanne lacked standing to assert Joseph's due process

---

governed by different statutes; we do not address those statutes in this opinion." *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 581 n.2 (Mo. banc 2012).

[3] Because several people involved in this case share surnames, we refer to the parties by their first names to avoid confusion; no disrespect or undue familiarity is intended.

[4] All statutory references are to the Revised Statutes of Missouri (Supp. 2019).

[5] The Act authorizes county collectors to sell tax-delinquent property, with the purchaser receiving a certificate of purchase. *JD Wealth LLC v. U.S. Bank Nat'l Ass'n, ND*, 681 S.W.3d 320, 327 (Mo. App. E.D. 2023). The purchaser may then obtain a collector's deed to the property at the conclusion of the redemption period and fulfillment of certain notice and application requirements. *Id.* During the redemption period, however, the property "owner . . . or any other persons having an interest in the land . . . may redeem the real property by paying the purchase price plus the cost of sale and interest to the county collector." *Sneil, LLC, v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 568 (Mo. banc 2012) (citing § 140.340.1).

rights; and (4) the court failed to ascertain the amount due the Thompsons under § 140.570 for improvements they made to the Property. Finding no error, we affirm.

## Background[6]

The following facts were undisputed in the summary judgment record. The mother of Joseph, Jerry, and Joanne (Mother) obtained fee simple title to the Property on July 29, 2016. On September 21, 2016, Mother executed a beneficiary deed conveying the Property to Joseph effective on Mother's death (the Beneficiary Deed). The Beneficiary Deed was recorded in the Recorder of Deeds Office of Saline County, Missouri, on September 26, 2016. The Beneficiary Deed identified Mother's address as 3408 Longfords Mill Drive in Columbia, Missouri, and Joseph's address as 314 East Highlander Street in Marshall, Missouri (the Property's address). Mother died on November 9, 2016. At that point, fee simple ownership of the Property automatically transferred to Joseph under § 461.025.1, even though notice of Mother's death was not recorded until October 28, 2020.[7]

---

[6] "We review 'the record in the light most favorable to the party against whom judgment was entered, and give[ ] the non-movant the benefit of all reasonable inferences from the record.'" *Vescovo v. Kingsland*, 628 S.W.3d 645, 653 (Mo. App. W.D. 2020) (quoting *Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362, 365-66 (Mo. App. W.D. 2020)).

[7] Under Section 461.025.1,

A deed that conveys an interest in real property to a grantee designated by the owner, that expressly states that the deed is not to take effect until the death of the owner, transfers the interest provided to the designated grantee beneficiary, *effective on death of the owner*, if the deed is executed and filed of record with the recorder of deeds in the . . . county . . . in which the real property is situated prior to the death of the owner.

3

When real estate taxes for the Property went unpaid, Collector sent a delinquent tax notice to Mother at her last known address of 3408 Longfords Mills Drive in Columbia, Missouri. The notice was returned marked "Unable to Forward." Collector then sent notice of the Property's delinquent taxes to Mother at 1700 Forum Boulevard, Apartment 1203, in Columbia, Missouri, an address identified during a records search conducted by Collector. That notice also was returned marked "Unable to Forward."

Collector offered the Property for sale at Collector's 2018 Delinquent Land Tax Sale, but the Property did not sell. Then, in June 2019, Collector sent notice to the following individuals by certified mail, return receipt requested, that the Property would be offered for sale a second time at Collector's 2019 Delinquent Land Tax Sale on August 26, 2019: (i) Joseph at 314 East Highlander Street in Marshall, Missouri; (ii) Mother at 3408 Longfords Mill Drive in Columbia, Missouri; and (iii) Mother et al., at 3408 Longfords Mill Drive, Columbia, Missouri. The certified mail addressed to Joseph was claimed by someone named Melissa Cook. The certified mail addressed to Mother and Mother et al. was returned marked "Unable to Forward." Collector also published a Notice of Delinquent Tax Sale in the Marshall newspaper three consecutive weeks in July 2019. On July 15, 2019, a person identifying himself as Joseph called Collector to

---

(Emphasis added). Thus, on Mother's death, ownership of the Property automatically passed to Joseph. *See In re Foreclosure of Liens for Delinq. Land Taxes by Action in Rem*, 682 S.W.3d 849, 850 (Mo. App. E.D. 2024) (finding ownership of land transferred automatically, on father's death, to son pursuant to a beneficiary deed executed by father). A beneficiary deed operates as a matter of law on the death of the grantor to transfer ownership of the subject property, but the deed is not a recorded transfer of title on the death of the grantor until proof of death is filed.

inquire about the delinquent taxes. The caller provided a mailing address for Mother of 1700 Forum Boulevard, Apartment 1203, Columbia, Missouri, but did not mention that Mother was deceased.

By August 2019, the amount of the delinquent taxes was $ 6,089.46. Diana was the successful bidder at the 2019 tax sale. Collector issued a Tax Sale Certificate of Purchase (Certificate) to Diana and sent notice to Mother, at the Forum Boulevard address, that the Property had sold for $ 6,089.46. Collector recorded the Certificate in the Saline County Recorder of Deeds Office on August 27, 2019.

On February 26, 2020, Diana obtained a title report for the Property, which showed title vested in Mother subject to the rights of Diana under the Certificate.[8] The title report did not include the Beneficiary Deed or reflect the fact that Mother was deceased.[9] However, in her responses to the statement of uncontroverted material facts submitted by Jerry and Joanne, Diana admitted that, before she sent out the redemption notices, she was aware of the Beneficiary Deed and the fact that the Property was occupied by at least one tenant who claimed to be paying rent to Joseph.

Despite that knowledge, Diana sent redemption notices to Mother only. Diana addressed the notices to Mother at the Property's address, the two Columbia addresses, and a Florida address Diana had found for Mother. Diana sent all the notices by first-

---

[8] Section 140.405.1 requires the tax sale purchaser to obtain a title search report from a licensed attorney or licensed title company detailing the ownership and encumbrances on the property.

[9] However, nothing in Chapter 140 allows a tax sale purchaser to rely solely on the title report in determining who is entitled to redemption notice under § 140.405.2.

class mail and certified mail, return receipt requested, except the notice addressed to Mother at the Property, which Diana sent by first-class mail only. All of the mailings were returned to Diana except the ones sent by first-class mail to the Property and the Forum Boulevard addresses. Diana searched the internet for additional addresses or an obituary for Mother, but found neither.

Following the § 140.340 redemption period, on August 27, 2020, Diana submitted to Collector Diana's title search report, her Affidavit for Collector's Deed, and copies of the redemption notices by first-class and certified mailings, together with addressed envelopes and returned envelopes.[10] Diana made no attempt to notify Joseph before filing these documents with Collector. That same day, Collector issued a Collector's Deed for the Property to Diana and recorded the Collector's Deed in the Saline County Recorder of Deeds Office.[11]

On October 28, 2020, Joseph executed a quitclaim deed for the Property to Jerry and Joanne. The quitclaim deed, along with an affidavit and a copy of Mother's death certificate, were recorded in the Saline County Recorder of Deeds Office that day.

On November 10, 2020, the Thompsons filed a petition against Joseph, Jerry, and Joanne, among others, to quiet title to the Property in Diana.[12] The petition did not

---

[10] Section 140.405.5 requires the tax sale purchaser to notify the collector by affidavit that the statutory notice requirements have been met and that the purchaser is authorized to acquire the deed to the property.

[11] "If the property is not redeemed during the . . . redemption period, 'at the expiration thereof, and on production of certificate of purchase,' the county collector is required to execute to the purchaser a deed to the property that vests in the grantee an estate in fee simple absolute." *Sneil*, 370 S.W.3d at 568 (quoting § 140.420).

[12] Joseph did not file a brief on appeal.

include allegations of improvements made to the Property by the Thompsons or a claim for reimbursement for such improvements.[13] On January 15, 2021, Jerry and Joanne filed an answer and asserted, as an affirmative defense, Diana's failure to comply with the redemption notice requirements of § 140.405.2. With their answer, Jerry and Joanne filed a counterclaim seeking to set aside the Collector's Deed because Diana's failure to provide the required notice rendered the Collector's Deed void. Thereafter, Jerry and Joanne amended their counterclaim and filed a third-party petition to add Collector as a party.[14]

The Thompsons moved for summary judgment on their claim to quiet title, but that motion was denied. Then Jerry and Joanne moved for summary judgment on their counterclaim to set aside the Collector's Deed; that motion was denied without prejudice because their third-party petition was non-compliant with § 140.600, so their motion for summary judgment was not ripe.

After again amending their counterclaim/third-party petition to provide for a refund to Diana for taxes paid with interest as required by § 140.600, Jerry and Joanne renewed their motion for summary judgment. And, on May 30, 2023, the court granted,

---

[13] The Thompsons twice moved for leave to amend their petition to add a claim under §§ 140.360 and 140.570 for reimbursement for improvements, but the court denied those motions. The Thompsons do not challenge the court's denial of those motions on appeal. We note, "[a]llowing amendments to pleadings is within the sound discretion of the trial court." *Soybean Merch. Council v. AgBorn Genetics, LLC*, 534 S.W.3d 822, 833 (Mo. App. W.D. 2017) (quoting *Asmus v. Cap. Region Fam. Prac.*, 115 S.W.3d 427, 432 (Mo. App. W.D. 2003)). Here, the Thompson's first motion to amend was filed nearly two years after their initial petition and after they had already moved for summary judgment.

[14] Collector did not file a brief on appeal.

7

by interlocutory judgment, their renewed motion for summary judgment, subject to further proceedings regarding reimbursement for taxes and costs of the tax sale.

On August 1, 2023, the court issued its final judgment granting summary judgment in favor of Jerry and Joanne on their second amended counterclaim and third-party petition seeking to void the Collector's Deed and declare Jerry and Joanne the record fee simple title owners of the Property. On the issue of redemption notice to Joseph (Points I, II, and III), the motion court concluded,

> Any argument about whether . . . Joseph . . . was the owner or not of record, or whether . . . Diana . . . had sufficient proof of the recorded beneficiary deed's legal transfer [of the Property], is not a defense to . . . Diana['s] . . . failure to at least timely mail to . . . Joseph . . . a redemption notice at the house of the subject Property, like the Collector successfully did for the pre-sale notification.

The motion court denied the Thompsons' petition to quiet title to the Property in their favor but awarded them a sum equal to all taxes paid on the Property with interest. As for the Thompsons' claim for reimbursement for improvements to the Property (Point IV), the court ruled that claim was a separate cause of action and was "neither ripe, nor proper for this case." The Thompsons moved for a new trial, but that motion was denied. This appeal follows.

## Standard of Review

"We review the grant of summary judgment *de novo.*" *Amoroso v. Truman State Univ.*, 683 S.W.3d 298, 302 (Mo. App. W.D. 2024) (quoting *Malin v. Mo. Ass'n of Cmty. Task Forces*, 669 S.W.3d 315, 320 (Mo. App. W.D. 2023)). "Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the moving

8

party is entitled to judgment as a matter of law." *Id.* at 303 (quoting *Malin*, 669 S.W.3d at 320).

**Analysis**

The Thompsons raise four points on appeal. They claim the motion court erred in granting summary judgment because (1) Joseph was not entitled to a redemption notice in that the mere designation of a beneficiary in a beneficiary deed does not constitute a "publicly recorded claim" under § 140.405 of the Act; (2) Joseph's due process rights under the Act were not violated in that the notices sent were reasonably calculated, under the circumstances, to notify interested parties of the pending tax sale and redemption period; (3) Jerry and Joanne lacked standing to assert Joseph's due process rights; and (4) the court failed to ascertain the amount due, under § 140.570, to the Thompsons for improvements to the Property. We address each point in turn beginning with the Thompsons' first two points, which we discuss together.

> **A. The motion court did not err in granting summary judgment to Jerry and Joanne because Joseph's beneficiary designation in the Beneficiary Deed is a "publicly recorded claim" under § 140.405, entitling Joseph to redemption notice, which Diana failed to provide.**

Section 140.405.2 states, in pertinent part,

> At least ninety days prior to the date when a purchaser is authorized to acquire the [Collector's] deed, the purchaser shall notify the owner of record and any person who holds a publicly recorded unreleased deed of trust, mortgage, lease, lien, judgment, or *any other publicly recorded claim* upon that real estate of such person's right to redeem the property.

(Emphasis added.) "[F]ailure to comply with the § 140.405 notice requirements by the purchaser at the delinquent tax sale will result in the loss of all interest in the real

property as a matter of law." *Sneil, LLC, v. Tybe Learning Ctr., Inc.*, 370 S.W.3d 562, 568 (Mo. banc 2012).

In their first point, the Thompsons argue that Joseph was not among those entitled to notice of redemption because the mere designation of an individual as a beneficiary in a beneficiary deed, without more, does not constitute a "publicly recorded claim" within the meaning of § 140.405.2.

Our "primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." *Harpagon MO, LLC v. Bosch*, 370 S.W.3d 579, 583 (Mo. banc 2012) (quoting *Parktown Imps., Inc. v. Audi of Am., Inc.*, 278 S.W.3d 670, 672 (Mo. banc 2009)). "If the intent of the legislature is clear and unambiguous, by giving the language used in the statutes its plain and ordinary meaning, then [we are] bound by that intent and cannot resort to any statutory construction in interpreting the statute." *Id.* (quoting *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. banc 2011)).

Section 140.405.2 requires a tax sale purchaser to provide a redemption notice to any person who holds a "publicly recorded claim" to the subject property. The question here is whether the Beneficiary Deed constituted a "publicly recorded claim" to the Property under § 140.405.2. We conclude that it did.

Mother, who held fee simple title to the Property, executed and publicly recorded the Beneficiary Deed to transfer the Property to Joseph on her death. As the purchaser at the tax sale, Diana took the Property subject to publicly recorded documents, including the Beneficiary Deed, and, because the Beneficiary Deed resulted in an operation-by-law

10

transfer of title to the Property on Mother's death, Diana was on actual notice of the possibility that a title transfer may have occurred, whether or not proof of Mother's death was recorded. Because the Beneficiary Deed transferred title to the Property by operation of law on Mother's death, the fact that the Beneficiary Deed was filed of record is sufficient to put Diana on notice that Joseph may have had a claim that warranted redemption notice. The fact that, at that time, there was no public record of Mother's death did not diminish Diana's statutory obligation to notify "any person who holds . . . any . . . publicly recorded claim" to the Property. The Beneficiary Deed was clearly a "publicly recorded claim" within the plain language of § 140.405.2.[15] The fact that no proof of Mother's death had been filed went to whether Joseph was the "record owner" during the redemption period, and not to whether he had a publicly recorded claim entitling him to notice.[16]

Nothing in § 140.405 requires that the claim to property be undisputed or ultimately adjudged legally valid before the duty to notify is triggered. *See Mortg. Elec. Registration Sys., Inc. v. Bellistri*, No. 4:09–CV–731 CAS, 2010 WL 2720802, at \*11 (E.D. Mo., July 1, 2010) ("The plain terms of Section[] . . . 140.405 do not require that

---

[15] At a minimum, the existence of the recorded Beneficiary Deed created a duty to inquire on the part of Diana as the purchaser. If, after reasonable inquiry, Diana was unable to confirm whether Mother was still living, notice should have been to provide to Joseph.

[16] The motion court was persuaded, in part, by Diana's knowledge, at the time she sent the redemption notices, that the Beneficiary Deed existed (even though it did not appear in the title search she commissioned) and that Joseph was collecting rent on the Property. But that knowledge has no bearing on the question posed in Point I – whether Joseph's beneficiary designation alone entitled him to notice under § 140.405.

11

the claim ultimately be adjudged legally valid. If a claimant asserts a claim of record, the claimant is entitled to be given notice of redemption rights."). That duty is triggered by a claim to property where the claim is publicly recorded. The beneficiary designation in the Beneficiary Deed satisfied those requirements and triggered Diana's obligation to provide a redemption notice to Joseph.[17]

This case is similar to *Glasgow Enterprises, Inc. v. Brooks*, 234 S.W.3d 407 (Mo. App. E.D. 2007). In *Glasgow*, the court held that a deed of trust identifying the warranty deed holder's wife as a co-borrower was a publicly recorded claim such that she was entitled to a redemption notice, even though she was not listed on the title to the subject property. *Id.* at 411. Thus, the court concluded that notice to the wife was required even though her interest in the property was contingent on transmutation of the property from separate property to marital property, and even then, that external proof would not be sufficient on its own to obligate the purchaser to notify the wife. *Id.* Nonetheless, the wife was named as a co-borrower on the deed of trust, which was sufficient to trigger the

---

[17] The Thompsons counter that the designation of a beneficiary does not constitute a publicly recorded claim under the Act because, under the Missouri non-probate transfer law, a transferring agency can require proof of the death of an asset's owner before transferring the asset to the designated beneficiary. And, because proof of Mother's death was not filed until after the Collector's Deed was issued, the Property did not transfer to Joseph on Mother's death and the Beneficiary Deed was not a publicly recorded claim. We find the Thompsons' reliance on the non-probate transfer law unpersuasive. First, their argument conflicts with the clear language of § 461.025, which provides that the owner's interest in real property transfers to the beneficiary immediately upon the owner's death. Second, because the Property transferred automatically from Mother to Joseph upon Mother's death, Collector did not act as a transferring agent in transferring the Property from Mother to Joseph.

12

notification requirement because she might have had legal title to the property based on marital rights. *Id.*

The same reasoning applies here. Under the publicly recorded Beneficiary Deed, Joseph held an interest in the Property that vested upon Mother's death. And, by nature of a beneficiary deed, title to the Property passed to Joseph by operation of law on Mother's death, regardless of whether her death was recorded. Thus, the naming of Joseph on the Beneficiary Deed and Mother's subsequent death were sufficient to trigger the notification requirement because Joseph acquired legal title to the Property on Mother's death. Thus, the motion court did not err when it concluded that the Beneficiary Deed was a "publicly recorded claim" within the meaning of § 140.405.2.

Point I is denied.

For their second point, the Thompsons contend that Joseph's due process rights under the Act were not violated because the notices Diana sent were reasonably calculated, under the circumstances, to notify interested parties of their redemption rights.[18]

"[D]ue process requires that a [tax sale purchaser] seeking to acquire property in which another person has an interest 'take reasonable steps to give notice' that the owner is in danger of losing the owner's interest in the property so 'the owner can pursue available remedies.'" *Sneil*, 370 S.W.3d at 572 (quoting *City of West Covina v. Perkins*,

---

[18] The only issue raised in Point II is whether Diana sent redemption notices to all persons entitled to notice under § 140.405.2; the timing and content of the notice are not at issue.

13

525 U.S. 234, 240 (1999)). "Due process requires that the notice be 'reasonably calculated, under all circumstances, to apprise the interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 795 (1983)).

In view of our conclusion that Joseph was entitled to redemption notice under § 140.405.2 because the Beneficiary Deed was a "publicly recorded claim," we need not address whether he also would have been entitled to notice as a matter of due process. Thus, we do not reach the merits of Point II.

Point II is denied.

**B. The motion court did not err in granting summary judgment to Jerry and Joanne because, as the legal owners of the Property, they had standing to challenge the Collector's Deed.**

For their third point, the Thompsons claim the motion court erred in granting summary judgment to Jerry and Joanne because they lacked standing to assert Joseph's due process rights.

Jerry and Joanne obtained ownership of the Property via the quitclaim deed issued by Joseph after Diana obtained the Collector's Deed but before the Thompsons filed their petition to quiet title. And the Thompsons named Jerry and Joanne as defendants in that action. But the Thompsons argue that Jerry and Joanne should not have been permitted to pursue their counterclaim/third-party petition because only Joseph could request to set aside the Collector's Deed on due process grounds. We disagree.

Jerry and Joanne owned the Property when the Thompsons filed their petition, and Jerry and Joanne have a right to assert a claim to protect their interest in the

14

Property.[19]  Diana's failure to give Joseph the notice required by § 140.405.2 rendered the tax sale void.  As the motion court concluded, before "the inception of [the Thompsons'] quiet title case herein, . . . Joseph . . . had divested himself of all interest in the Property by transferring such, including his redemption rights and right to challenge the tax sale, to . . . Jerry . . . and Joanne . . . ."

Jerry and Joanne sought a declaration that the Collector's Deed is void and Jerry and Joanne are the record title fee simple owners of the Property.  The fact that Diana's failure to notify Joseph violated his due process rights in no way diminished the ability of Jerry and Joanne to protect their due process rights by challenging the Collector's Deed.

Point III is denied.

**C. The motion court did not err in granting summary judgment to Jerry and Joanne without addressing the Thompsons' claim for reimbursement under § 140.570 for improvements to the Property because that claim was not supported by the summary judgment record.**

Lastly, the Thompsons contend the motion court erred in granting summary judgment to Jerry and Joanne without addressing the Thompsons' claim for reimbursement under § 140.570 for improvements they made to the Property.  The motion court concluded that the Thompsons' claim for reimbursement was a separate cause of action (to be brought as a counterclaim in an action for ejectment by Jerry and Joanne) and, thus, was not ripe or proper.

---

[19] The fact that Jerry and Joanne owned the Property when the Thompsons filed their petition distinguishes this case from *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 621 (Mo. App. E.D. 2009) cited by the Thompsons in support of their third point.

Section 140.570.1. provides, in pertinent part,

> in case judgment be rendered against the person holding the title from the collector . . . for the recovery of such land, in an action of ejectment or other action, either at law or in equity, brought by the owners of such lands, . . . , *the court shall ascertain the amount due* to the party holding such tax deed and from whom due for principal and interest and *for all improvements made by him on such lands* including subsequent taxes paid with interest, and shall decree the payment thereof within such reasonable time by the owner of such land.

(Emphasis added.)[20]

On appeal, the Thompson's argue that the mandatory language of § 140.570.1 compels the motion court to ascertain, as part of this case, the amount they are due for improvements made to the Property. The issue they raise on appeal is whether the court erred in granting summary judgment in favor of Jerry and Joanne without providing for reimbursement for those improvements.

In reviewing the grant of summary judgment, we look to the summary judgment record to determine whether the court erred in granting summary judgment. "[F]acts come into a summary judgment record *one and only one way*—as separately numbered paragraphs and responses [under Rule 74.04]." *Green v. Fotoohighiam*, 606 S.W.3d 113, 119 (Mo. banc 2020) (quoting *Fidelity Real Est. Co. v. Norman*, 586 S.W.3d 873, 882

---

[20] Likewise, § 140.360.1 provides, in relevant part,

> the premises shall not be restored to the person redeeming, until he shall have paid or tendered to the adverse party the value of [lasting and valuable] improvements; and, if the parties cannot agree on the value thereof the same proceedings shall be had in relation thereto as shall be prescribed in the law existing at the time of such proceedings for the relief of occupying claimants of lands in actions of ejectment.

(Mo. App. W.D. 2019) (emphasis in original)).  Here, none of the separately numbered paragraphs and responses in the record before us pertained to improvements made by the Thompsons, the timing of those improvements, or their cost.  Thus, there were no facts in the summary judgment record that would have enabled the court to determine, as part of this case, whether the Thompsons were entitled to reimbursement and, if so, how much. The Thompsons cannot claim error in granting summary judgment when they failed to include essential information in the summary judgment record.

Point IV is denied.

## Conclusion

The motion court did not err in granting summary judgment to Jerry and Joanne on their second amended counterclaim and third-party petition seeking to void the Collector's Deed and declare them owners of the Property.  The court's judgment is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, Janet Sutton, Judge, concur.

17